IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
PENNSYLVANIA

Case No: 4.26-CV-1848 (To be assigned by Clerk)

**FILED**
HARRISBURG, PA

JUL 0 2 2026

PER _____
DEPUTY CLERK

DAMIAN LITTLE,

Plaintiff,

v.

WELLSPAN HEALTH, et al,

Defendant.

NOTICE OF EMERGENCY ADA ACCOMMODATION: SIGNATURE BY PHYSICAL
PROXY

Now comes the Plaintiff, Damian Little, appearing pro se, to formally advise the Court and the
Clerk of Court of an emergency administrative accommodation pursuant to the Americans with
Disabilities Act (ADA) and the constitutional right of access to the federal courts.

Plaintiff suffers from acute, documented physical and neurological disabilities. Furthermore,
Plaintiff is currently managing an active structural injury to his dominant right hand. On June 6,
2026, UPMC Emergency Department officially diagnosed a "sprain of interphalangeal joint of
right thumb, initial encounter". Standard medical treatment for this injury mandates the use of a
rigid splint for joint immobilization, which actively prevents the fine motor function and
dexterity required to hold a pen. This physical impairment renders Plaintiff physically incapable
of executing a manual signature.

Accordingly, Plaintiff has utilized his mother, Krystal Asbury, strictly as a physical scribe and
administrative proxy to execute his signature on all attached pleadings, civil cover sheets, fee
waivers, and summonses. This execution is performed under Plaintiff's direct verbal instruction,
review, and immediate physical supervision. Plaintiff retains absolute command, ownership, and
pro se status over this action. This proxy signature is not an unauthorized practice of law, but a
required physical accommodation.

The Clerk of Court is requested to accept these filings under mandatory disability
accommodation protocols.

Respectfully submitted,

By Physical Proxy

Krystal Asbury, on behalf of Damian Little, Plaintiff

Date: July 2, 2026

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Damian Little,

Plaintiff,

v.

WellSpan Health,

Alyssa Miller, PA-C,

Gary Zimberg, MD,

Aleksandr Voinov, PA-C,

Mona Stecker, CRNP,

Zhenhui Li, MD,

Jamie Hadarean, CRNP,

Dr. Siddiqi,

Roxanna Gapster,

Leslie Kuipers,

David J. Freedman, Esq., and

Barley Snyder LLP,

Defendants.

CIVIL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

NATURE OF THE ACTION

1. This civil action seeks damages for the Systemic Abuse of a Disabled Patient, Gross Medical Malpractice, Patient Abandonment, Intentional Infliction of Emotional Distress (IIED), Fraudulent Concealment, Intentional Chart Falsification, Civil Conspiracy, and violations of Title

III of the Americans with Disabilities Act (ADA). This action stems from a systemic, multi-departmental pattern of active endangerment, stonewalling, and administrative retaliation by the named Defendants across WellSpan Health's Cardiology, Primary Care, Neurology, Psychiatry, and Legal/Administrative departments.

STATEMENT OF FACTS

Part I: The Multi-Systemic Baseline & Cardiology Negligence

2. Plaintiff is an established patient managing complex, chronic disabilities including Postural Orthostatic Tachycardia Syndrome (POTS), chronic Lyme disease, Tourette's Syndrome, and profound neurological dysfunction. These conditions operate on a highly volatile, mutually compounding multi-systemic feedback loop. A primary neurological flare instantly cascades, triggering blood pressure and heart rate fluctuations causing a POTS crash. This dysautonomia crash triggers severe immune hyper-reactivity from chronic Lyme disease, which violently inflames the neurological symptoms. Every condition acts as an absolute auto-trigger.

3. Beginning in early 2026, Defendant Alyssa Miller, PA-C, and the WellSpan Cardiology department actively denied Plaintiff the recognized standard of care for POTS, aggressively defending a fluid-intake directive that was medically impossible due to Plaintiff's documented slow gastric motility.

4. Plaintiff filed multiple formal grievances regarding this impossible directive. WellSpan acknowledged the grievances but upheld the dangerous directive. Plaintiff subsequently escalated and reopened the grievance. In direct retaliation for this escalation, Defendant Dr. Siddiqi bypassed standard medical protocols and initiated unprofessional contact with Plaintiff's emergency contact (a former fiancé). This intentionally violated Plaintiff's privacy and created severe psychological distress.

5. Due to this ongoing negligence, Plaintiff's external Infectious Disease specialist (Dr. Anna De Obaldia) intervened and initiated a network transfer to pull Plaintiff away from WellSpan Cardiology.

6. Before this transfer could be completed, the specific, documented negligence and active denial of dysautonomia care by Defendants Miller and Siddiqi precipitated a severe autonomic POTS crash, resulting in a sudden physical fall and severe structural trauma to the Plaintiff's dominant right hand at 11:35 PM on May 25, 2026. Following this fall, Dr. De Obaldia was forced to intervene again to emergently escalate Plaintiff's new Cardiology intake appointment to July 2, 2026.

Part II: Primary Care Abandonment & Orthopedic Stonewalling

7. Defendant Jamie Hadarean, CRNP, engaged in a continuous, documented pattern of medical abandonment and chart manipulation. On May 26, 2026, Defendant Hadarean actively brushed off the contemporaneous clinical report of Plaintiff's physical fall and instructed Plaintiff to seek care elsewhere.

8. Following severe, untreated injuries and the resulting functional immobility of the dominant hand, Plaintiff presented to the UPMC Emergency Department on June 6, 2026. UPMC medical documentation explicitly confirmed a "Sprain of interphalangeal joint of right thumb, initial encounter," mandated rigid structural immobilization with a lace-up splint, and directed a standard primary care follow-up to address the structural injury.

9. On June 8, 2026, Plaintiff uploaded the official UPMC documentation directly to Defendant Hadarean. Instead of initiating the medically necessary orthopedic referral to address the active nerve pain and structural damage, Defendant Hadarean intentionally stonewalled the Plaintiff.

10. On June 15, 2026, Defendant Hadarean maliciously minimized this acute trauma by logging into Plaintiff's electronic health record and unilaterally moving the actively splinted, structurally compromised limb to the "past medical history" section. This deliberate chart manipulation was designed to bury the active trauma, manipulate clinical data, and absolve the Defendant of clinical responsibility, resulting in the prolonged complete loss of mobility in Plaintiff's dominant right hand and the loss of Plaintiff's ability to perform basic Activities of Daily Living (ADLs). Due to this abandonment, Dr. De Obaldia was forced to intervene, submitting an external orthopedic referral and initiating the process to pull Plaintiff away from WellSpan Primary Care entirely. This extraction was finalized on July 1, 2026, when Plaintiff formally and irrevocably dismissed CRNP Hadarean and the WellSpan Primary Care department from his medical team. Recognizing the severe, ongoing medical abandonment, Dr. De Obaldia once again intervened to secure Plaintiff's safety, submitting a direct referral to establish a competent primary care team at Penn State Health's Cocoa Outpatient Center.

Part III: Neurology Concealment, Chart Falsification & Patient Dumping

11. Defendants Mona Stecker, CRNP, and Aleksandr Voinov, PA-C, in the WellSpan Neurology department engaged in a documented pattern of evasive administrative practices, retaliation, and extreme chart falsification.

12. Beginning between November and December 2025, Defendant Voinov diagnosed Plaintiff with primary Fibromyalgia and prescribed specific medication for the condition, yet intentionally failed to document the diagnosis in Plaintiff's active medical chart. When initially confronted via internal grievance, Defendant Voinov falsely claimed to WellSpan superiors that he never made the diagnosis. Consequently, Defendants retroactively moved "Fibromyalgia, primary"—a lifelong, incurable chronic condition—into "past medical history" while intentionally blocking it

from the Active Health Issues list. This constitutes a medically impossible classification designed to intentionally gatekeep necessary medication and discredit the Plaintiff's active symptomology.

13. Shortly thereafter, from December 2025 through January 2026, Defendants attempted to prematurely transfer Plaintiff to Rheumatology and Pain Management—a patient dumping tactic designed specifically to avoid addressing Plaintiff's ongoing diagnostic and medication demands.

14. On May 26, 2026, the clinic engaged in a dangerous medication hostage tactic. The clinic intentionally blocked a critical, dependency-forming Pregabalin refill, demanding Plaintiff schedule a mandated face-to-face appointment before releasing the medication. Facing imminent central nervous system withdrawal, Plaintiff was forced to explicitly threaten regulatory action with the PA Department of Health, the State Medical Board, and the Attorney General before the clinic finally relented and issued a 30-day supply. Furthermore, on June 29, 2026, in direct retaliation for Plaintiff advocating for his physical safety and utilizing the portal as a necessary ADA accommodation to prevent acute medication withdrawal, WellSpan Neurology Clinical Management formally threatened to dismiss Plaintiff from the practice entirely.

15. It was only during this hostile May 26th medication dispute that the clinic finally admitted Defendant Voinov was "no longer with our practice"—a critical personnel change deliberately concealed from Plaintiff for over a month to disrupt care. Recognizing the immediate danger of this clinic's practices, Dr. De Obaldia intervened and submitted referrals to permanently pull Plaintiff from WellSpan Neurology.

Part IV: Psychiatry, Medication Withholding, & ADA Violations

16. Defendants Gary Zimberg, MD, and Zhenhui Li, MD, in the WellSpan Psychiatry department weaponized Plaintiff's critical medications. Facing imminent central nervous system

withdrawal and severe rebound neurological tics, Plaintiff was met with active medication withholding.

17. In late April and early May 2026, Defendant Zimberg attempted to deny Plaintiff's federal rights under the Safe Connections Act. While Plaintiff utilized this federal legislation to safely and securely distance from an abusive domestic situation, Defendant Zimberg acted with extreme hostility, verbally attacking the Plaintiff over the phone, demanding they "knock it off," and directly causing severe, quantifiable psychological trauma and endangerment to a vulnerable disabled patient in an active crisis. Following this abuse, Dr. De Obaldia was forced to intervene and initiate referrals to permanently pull Plaintiff from WellSpan Psychiatry.

Part V: External Medical Intervention Required to Prevent Fatality

18. The systemic withholding of care, chart falsification, and retaliatory conduct executed across the WellSpan Cardiology, Neurology, Psychiatry, and Primary Care departments caused such severe, life-threatening physical and psychological destabilization that Plaintiff's external Infectious Disease specialist was forced to independently intervene. This specialist had to step completely outside her scope of practice to assume emergency coordination of Plaintiff's care, successfully extracting Plaintiff from four separate, failing WellSpan departments to prevent a catastrophic, fatal multi-systemic collapse.

Part VI: Administrative Obstruction & Defrauding the Attorney General

19. Defendant Roxanna Gapster and WellSpan administrative leadership engaged in documented institutional obstruction by explicitly refusing to provide Plaintiff with tracking reference numbers for active, critical-level federal grievances, falsely labeling them "internal documents" to block regulatory oversight.

20. In an effort to conceal network-wide liability, Defendant Leslie Kuipers intentionally provided materially false, fabricated statements to the Pennsylvania Office of the Attorney General. Despite the Neurology clinic officially claiming internally that Fibromyalgia was never diagnosed, Defendant Kuipers explicitly told the Attorney General that the diagnosis was made and charted, exposing the internal chart falsifications and constituting intentional fraud and perjury to a state regulatory body.

21. Defendants David J. Freedman and Barley Snyder LLP assumed active legal management of Plaintiff's communications. Despite being formally notified on May 21, 2026, and May 30, 2026, of the ongoing clinical abandonment, the chart falsifications, the physical damages, and the lies submitted to the Attorney General, Defendant Freedman facilitated the timeline of concealment, rendering him an active co-conspirator in the obstruction of Plaintiff's federal rights.

CAUSES OF ACTION

Count I: Violations of ADA Title III (Against WellSpan Health & Associated Clinics)

22. Defendants operate as places of public accommodation. Defendants systematically denied Plaintiff equal access to medical services, stonewalled necessary orthopedic referrals for a severe physical impairment, and retaliated against Plaintiff for exercising their federal rights and requesting necessary accommodations.

Count II: Systemic Abuse of a Disabled Patient & Gross Medical Negligence (Against WellSpan Health, Zimberg, Voinov, Stecker, Li, Hadarean, Miller, Siddiqi)

23. Defendants breached the standard of care and actively abused a disabled patient by denying dysautonomia intervention, brushing off reported physical injuries, stonewalling critical UPMC hospital documentation, withholding severe neurological medications, forcing life-threatening withdrawals, and utilizing psychological hostility during a domestic crisis.

Count III: Fraudulent Concealment, Chart Falsification & Civil Conspiracy (Against WellSpan, Kuipers, Gapster, Freedman, Barley Snyder LLP, Hadarean, Stecker, Voinov)

24. Defendants, acting in concert, maliciously falsified official medical charts by moving active, structurally compromised injuries and primary chronic conditions to "past medical history". They knowingly withheld material facts regarding provider status and internal grievance processing, and intentionally lied to the Pennsylvania Office of the Attorney General to purposefully hinder Plaintiff's ability to seek external regulatory oversight and justice.

Count IV: Intentional Infliction of Emotional Distress (Against WellSpan Health, Zimberg, Siddiqi, Hadarean, Miller)

25. Defendants engaged in extreme and outrageous conduct—including verbal abuse, retaliatory contact with emergency contacts, deliberate chart manipulation of a functionally immobilized limb, and the intentional withholding of life-sustaining care—that recklessly and deliberately caused Plaintiff severe, quantifiable psychological trauma and physiological dysautonomia crashes.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Award compensatory damages against Defendants in an amount sufficient to fully fund an Irrevocable First-Party Special Needs Trust (SNT). This trust shall be established to comprehensively cover Plaintiff's overall quality of life, including lifelong housing stability, residential upgrades, utility and telecommunication bills, out-of-network multi-systemic and psychological medical care, and specialized therapeutic pursuits necessary for mental health and autonomic stability, ensuring all damages resulting from this systemic abuse are fully mitigated without jeopardizing Plaintiff's eligibility for federal or state disability benefits.

B. Award punitive damages against all Defendants for the willful, malicious, and documented obstruction of justice, chart falsification, fraud upon the Attorney General, civil conspiracy, and systemic abuse of a disabled patient.

C. Grant any further equitable or financial relief this Court deems just, proper, and necessary to permanently secure Plaintiff's long-term health and safety.

Respectfully Submitted,

Krystal Asbury, By Proxy for
Damian Little, Pro Se Plaintiff
(Signed by Proxy as a reasonable ADA accommodation due to the documented severe immobility and structural splinting of Plaintiff's dominant right hand, preventing physical signature)
Date: July 2, 2026
894 Old Berwick Road
Bloomsburg, PA 17815
717-654-4817
damianwork13@gmail.com